[Cite as *B&J Elec., Co. v. Cincinnati*, 2020-Ohio-3869.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| B&J ELECTRICAL COMPANY, INC., | : | APPEAL NO. C-190368 |
| | | TRIAL NO. A-1803192 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| CITY OF CINCINNATI | : | |
| Defendant-Appellee. | : | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 29, 2020


*Robbins, Kelly, Patterson, & Tucker, LPA, Daniel J. Temming* and *Megan L. Ebenschweiger*, for Plaintiff-Appellant B&J Electrical Company, Inc.,

*Paula Boggs Muething*, City Solicitor, *Shuva J. Paul*, Assistant City Solicitor, for Defendant-Appellee City of Cincinnati.

**BERGERON, Judge.**

{¶1}    A corporation comes before us claiming that a municipal ordinance infringes on the fundamental right to marry.  That may sound odd because, the last we checked, a corporation can't marry.  In actuality, however, it seeks to vindicate the rights of its owner, who is already married (and not a party to this appeal).  The owner's marriage to a wealthy spouse put him over the income threshold for a small business certification, spawning this constitutional claim.  But try as he might to squeeze this into a constitutional bucket, the owner's efforts (really, those of his company) fall well short.  For the reasons explained below, we affirm the trial court's rejection of these claims.

I.

{¶2}    This appeal originates with plaintiff-appellant, B&J Electrical Company, Inc.'s, ("B&J") application for renewal of its "Small Business Enterprise" ("SBE") certification from the Department of Economic Inclusion ("DEI").  Under Chapter 323 of the Cincinnati Municipal Code, the city of Cincinnati ("City") created certain small business enterprise and local business enterprise programs for purposes of conducting business with the City.  The ordinance provides a procedure by which qualifying entities may obtain certification as an SBE, including satisfying the definition of an SBE under Cincinnati Municipal Code 323-1-S3.  Cincinnati Municipal Code 323-7(a).

{¶3}    While its prior applications for certification and recertification passed with flying colors, B&J's most recent application hit a snag when the DEI director denied the application upon determining that one if its owners', Michael Doerger, personal net worth and aggregate net worth with his spouse exceeded the net worth caps included in Cincinnati Municipal Code 323-1-S3(e).  B&J subsequently appealed

the decision to the Contract Compliance Advisory Board ("Board"), as allowed pursuant to Cincinnati Municipal Code 323-23. But the Board agreed with denial on the basis that the aggregate net worth of Mr. Doerger and his wife exceed the $750,000 net worth cap for business owners.

{¶4} Unsatisfied with that result, B&J invoked the appellate process under R.C. 2506.01(A), which allows for appeals of final decisions made by a board of a political subdivision to a court of common pleas. In proceedings before a magistrate, B&J asserted that computation of Mr. Doerger's net worth should have excluded his spouse's assets because the pair had signed a prenuptial agreement that allegedly prevented Mr. Doerger from accessing his wife's assets. B&J then spun this into a constitutional argument, insisting that aggregation of the couple's assets discriminated on the basis of marital status, thereby triggering strict scrutiny and ultimately violating the Equal Protection Clause of the United States Constitution.

{¶5} The magistrate eventually upheld the denial of the recertification, after which B&J lodged objections to that decision with the trial court, again portraying this denial as a violation of the fundamental right to marry. Unmoved, the trial court rejected this contention and instead upheld the magistrate's decision determining that the DEI properly applied Cincinnati Municipal Code 323-1-S3(e) and that no constitutional violation occurred.

{¶6} B&J timely appealed the trial court's decision, and now asserts a single assignment of error before us, positing that the trial court erred in adopting the magistrate's decision because the SBE certification process violates the fundamental right to marry.

II.

{¶7} Initially, we must consider a question of our own jurisdiction. Because, as an appellate court, we only have jurisdiction to review "judgments or final orders" of lower courts, we must first determine our own jurisdiction before proceeding to the merits of this appeal. *Alexander v. LJF Mgt., Inc.*, 1st Dist. Hamilton No. C-090091, 2010-Ohio-2763, ¶ 10. Relevant here, B&J appeals from the trial court's adoption of the magistrate's decision. Our caselaw provides that a magistrate's decision remains interlocutory until a trial court (1) rules on any objections, (2) adopts, modifies, or rejects the magistrate's decision, and (3) enters a judgment that determines all the claims for relief. *Id.* at ¶ 12; *Becher v. Becher,* 8th Dist. Cuyahoga No. 108472, 2020-Ohio-669, ¶ 23 (noting that a court that adopts, modifies, or rejects a magistrate's decision shall also enter a judgment or interim order); Civ.R. 53(D)(4)(a-e). Such an entry should " 'clearly and finally' " dispose of the issue between the parties to the action. *Alexander* at ¶ 13, quoting *Millies v. Millies,* 47 Ohio St.2d 43, 44, 350 N.E.2d 675 (1976), fn.2.

{¶8} Perusing the trial court's May 29, 2019 entry, we find that it satisfies, albeit barely, such a standard. The entry reflects that the trial court overruled the objection to the magistrate's decision and adopted the decision. So far, so good. However, the order does not use the term "judgment," which generates some ambiguity as to its finality. (And we encourage trial courts to specifically use the term "judgment" when intending to enter judgment in cases like this to avoid unnecessary additional proceedings.) But as we review the entry, it "clearly and finally" disposed of the sole issue between the parties, the denial of B&J's application for recertification as a SBE. The only issue before the trial court, and the only issue in these proceedings, was the underlying denial of recertification. With the overruling

4

of the objections and adoption of the magistrate's decision, the trial court finally resolved this issue between the parties. *Compare Alexander* at ¶ 14 (no final order where multiple entries failed to delineate the relief provided from multiple magistrate decisions). Therefore, the entry constitutes a final order, paving the way for us to consider the merits of B&J's appeal.

III.

{¶9} Turning to the merits, this appeal originates from the trial court's review of an administrative decision. Our review of appeals of administrative decisions pursuant to R.C. 2506.04 is generally confined to questions of law. *Lohmann v. City of Cincinnati*, 1st Dist. Hamilton No. C-170242, 2018-Ohio-2505, ¶ 23; R.C. 2506.04 ("The judgment of the court may be appealed by any party on questions of law[.]"). Reversal under this standard requires that the court of common pleas erred in its application or interpretation of the law or the decision is not supported by a preponderance of the evidence as a matter of law. *Weitzel v. Cincinnati*, 1st Dist. Hamilton No. C-150415, 2016-Ohio-1322, ¶ 11.

{¶10} With lofty language and wrapping itself in the aura of *Obergefell v. Hodges*, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015) B&J frames this appeal as a referendum on the fundamental right to marry. Invoking the Equal Protection and Due Process Clauses of the Fourteenth Amendment, B&J insists that the ordinance impermissibly discriminates against business owners on the basis of marital status, i.e., the ordinance treats married business owners (more accurately, those with a wealthy spouse) differently than unmarried business owners for purposes of SBE certification. As the centerpiece for its argument, B&J relies on *Obergefell*, in which the Supreme Court determined that the fundamental right to marry extended to same-sex couples. Relying on both the Equal Protection and Due Process Clauses,

5

the Court in *Obergefell* found that the challenged laws in that case impermissibly discriminated against same-sex couples, denying them due process of law and a fundamental freedom. *Id.* at 2604-2605.

{¶11} We find this case a far cry from *Obergefell* for myriad reasons. First, we are not even convinced that B&J has standing to raise any type of right to marriage claim. Mr. Doerger is not a party to this case, and we are unaware of any authority extending the fundamental right to marry to a corporation. Although B&J fails to offer any convincing reason why it can marshal the constitutional rights of a nonparty in this proceeding, we will consider the merits of its argument nonetheless.

{¶12} Unfortunately for B&J, its argument fares no better in trying to convince us that a constitutional violation occurred. Nothing in the language of the ordinance implicates an individual's fundamental right to marry rising to an equal protection or due process violation akin to what was at stake in *Obergefell*. Certification as an SBE under Cincinnati Municipal Code 323-1-S3(e) simply provides that "[t]he personal net worth of each owner * * * cannot exceed $750,000.00 at the time of initial certification or recertification" and "[i]f an owner is married, the aggregate net worth of the owner and his or her spouse may not exceed $750,000.00."[1] Nothing in the ordinance purports to regulate an individual's ability to marry. To that point, Mr. Doerger is, in fact, married and no one interfered with his ability to forge that union.

{¶13} We must also point out that if Mr. Doerger married a spouse with no assets, then the city's ordinance would not have precluded B&J from securing SBE status. What B&J really seems to complain about is an alleged infringement on the

---

[1] We should also note that this $750,000 limit excludes significant categories of assets, such as certain retirement funds and home equity, so it is not even as "harsh" as it might otherwise appear.

right to marry someone *wealthy*. B&J fails to identify any authority that would recognize such a right, and indeed, taken to its logical extreme, such a proposition would call into question virtually any government entitlement program with any income restrictions. Legislative distinctions among individuals based on marital status are routinely found permissible and have long formed a basis for determining access to certain government benefits. *See Califano v. Jobst,* 434 U.S. 47, 53, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977) (noting rationality in assuming that a person's marital status is a relevant test for a person's dependency and rejecting social security benefits based on marital status was permissible); *Smith v. Shalala*, 5 F.3d 235, 239 (7th Cir.1993) (finding that classification as married couple for supplemental social security income was subject to rational basis review as it did not involve a suspect class or burden a fundamental right); *In re Talmadge*, 832 F.2d 1120, 1125 (9th Cir.1987) (distinctions among debtors based on marital status did not involve a suspect class and satisfied rational basis review); *Poland Twp. Bd. of Trustees v. Swesey*, 7th Dist. Mahoning No. 02 CA 185, 2003-Ohio-6726, ¶ 13 ("A classification based on marital status does not implicate a suspect class, nor does it involve a fundamental right."); *Fontneau v. Town of Sandwich,* 251 F.Supp.2d 994, 1005 (D. Mass.2003) (rejecting argument that marina regulation treating married and unmarried co-owners differently violated equal protection as marital status is not a protected class). In sum, classifications based on marital status fail to implicate fundamental rights or a suspect class. *Shalala* at 239 ("Because this classification based on marital status does not involve a suspect class and does not impact a fundamental interest, we must examine it under the rational basis test.").

{¶14} B&J counters with cases purportedly demonstrating that legislation aggregating spousal assets raises constitutional alarm. But these cases involved

7

challenges to laws specifically prohibiting discrimination based on marital status, rather than constitutional challenges of the type at issue here. *See McGee v. East Ohio Gas Co.*, 111 F.Supp.2d 979, 981 (S.D.Ohio 2000) (plaintiff raised class action suit as "credit-worthy married woman" alleging that the defendant violated her rights under the Equal Credit Opportunity Act and Ohio's Civil Rights Act); *Liberty Sav. Bank, F.S.B. v. Sortman*, 2d Dist. Montgomery No. 16532, 1998 WL 184483 (Apr. 17, 1998) (plaintiffs claimed that bank violated the Equal Credit Opportunity Act by failing to determine husband's individual creditworthiness before requiring wife to execute the mortgage). B&J also features *Hoeper v. Tax Comm. of Wis.,* 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248 (1931), but that case dealt with a Wisconsin law that required the incomes of spouses to be aggregated and taxed at a higher rate when Wisconsin law considered the spousal assets separate. Therefore, *Hoeper* does not implicate the right to marry, but rather due process ramifications of governmental taking of individual property. *See id.* at 215. In short, none of this authority supports the novel right that B&J invites us to fashion.

{¶15} As we see no fundamental right or suspect class at play, B&J's challenge to the ordinance must only survive rational basis review. *Romer v. Evans*, 517 U.S.620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (noting that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."). Rational basis review requires that the ordinance be upheld where it is rationally related to a legitimate governmental purpose. *Stolz v. J & B Steel Erectors, Inc.*, 155 Ohio St.3d 567, 2018-Ohio-5088, 122 N.E.3d 1228, ¶ 19, citing *Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 66; *Romer* at 631. Under this standard of review, the law will not be

invalidated if it is "grounded on a reasonable justification[.]" *Arbino* at ¶ 66. And to that point, B&J did little to prove that the City lacked any rational basis to support the ordinance, staying largely mum on that score. *State v. Williams*, 88 Ohio St.3d 513, 531, 728 N.E.2d 342 (2000), citing *Heller v. Doe by Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) ("The state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, the challenger must negative every conceivable basis before an equal protection challenge will be upheld."). Without any developed argument as to why a rational basis is wanting, we find that B&J cannot sustain its burden.

{¶16} In conclusion, as nothing within the requirements of Cincinnati Municipal Code 323-1-S3(e) implicates an individual's fundamental right to marry, much less occasions a violation thereof, we overrule B&J's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its own entry this date.

9